UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADELE FROST,<br><br>    *Plaintiff,*<br><br>    *v.*<br><br>DEPARTMENT OF DEVELOPMENTAL SERVICES OF THE STATE OF CONNECTICUT,<br><br>    *Defendant.* | Civil No. 3:19cv1572 (JBA)<br><br>February 14, 2022 |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Adele Frost commenced this suit on October 7, 2019. She alleges that Defendant Department of Developmental Services failed to provide reasonable accommodations for her disabilities under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*. Defendant moves for summary judgment on all claims on the basis that (1) Plaintiff failed to establish the prima facie case that she is disabled under the Act; (2) Plaintiff failed to establish that Defendant did not reasonably accommodate her; (3) Defendant was not responsible for a breakdown in the contemplated interactive process; and (4) Plaintiff's claim for punitive damages must be dismissed because of the long established rule that punitive damages are not permitted under § 504 of the Rehabilitation Act. (Mem. of L. in Supp. of Def.'s Mot. For Summ. J. ("Def.'s Mem.") [Doc. #46-1] at 1.) Although the Court concludes that Plaintiff may be able to prove to a fact finder that she is disabled, for the following reasons, Defendant's motion for summary judgment is GRANTED.

**I.    Background**

Defendant is an administrative agency of the State of Connecticut that accepts and receives federal funds for the programs it maintains in service of individuals with intellectual

disabilities. (Compl. ¶ 8; Def.'s Mem. at 1.) Plaintiff has been employed by Defendant since 1998, and currently works as a case manager. (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") [Doc. # 53] at 2; Pl's Loc. 56(a) Stmt. of Facts in Opp'n to Summ. J. (Pl.'s Stmt") [Doc. # 54] ¶ 3.) As a case manager, Plaintiff is not involved in direct client care and the position is not considered hazardous. (Pl.'s Stmt. ¶14.) Case managers work within a team consisting of day program employees, therapists, doctors, parents, guardians, and the disabled individual. (*Id.* ¶ 15.) Defendant requires case managers to travel to meet face-to-face with the disabled individuals to whom they are assigned twice per year; but Defendant does not require case managers to be alone with those individuals, nor does it require case managers to intervene if any individual client exhibits aggressive or problematic behavior. (*Id.* ¶¶16-17, 51.) Plaintiff chooses to meet with clients assigned to her four times per year. (*Id.* ¶ 17.)

In 2015, Plaintiff sustained work-related injuries while administering aid to a non-aggressive client. (*Id.* ¶6; Commissioner's Examination, Pl.'s Ex. 15 [Doc. #54-18] at 1.) Plaintiff claims she now endures chronic impairments to her neck, back, and shoulders as a result of this incident. (Pl.'s Stmt. ¶ 19; Pl.'s Mem. at 2; 8/14 Dr. Bash Letter, Pl.'s Ex. 17 [Doc. #54-20] at 2.) Despite her injuries, she has sold crafts for more than ten years and started her own crafting business sometime after the 2015 incident. (Pl.'s Stmt. ¶¶ 11-12.) However, Plaintiff has experienced difficulties working in her capacity as a case manager, such as her inability to carry the laptop computer that Defendant issued to her for work-related activities. (Pl.'s Stmt. ¶ 22.) Plaintiff claims she made several informal requests for a modification of her caseload so that she would not need to travel substantial lengths of time to visit clients assigned to her and that a client who had verbally assaulted her be re-assigned to another case manager. (Pl.'s Answers to Def.'s Interrogatories, Pl.'s Ex. 13 [Doc. # 54-16] at A-1, A-2.) Plaintiff claims that, rather than accommodate her, Defendant's agents with

supervisory authority ignored her requests, and even assigned new clients to her who required her to travel father than she requested. (*Id.*)

Plaintiff first submitted a formal request to Defendant's Human Resources department seeking an accommodation for her injuries on or about May 15, 2018. (Pl.'s Stmt. ¶ 18; Pl.'s Answers to Def.'s Interrogatories, Pl.'s Ex. 13 [Doc. # 54-16] at A-2.) Plaintiff requested an office with a door, handicap parking, an Ergotron workstation, a Plantronics telephone headset, a chair accommodating various leg positions, limited push/pull file cabinets, flexible schedule for doctor appointments and physical therapy, teleconference meetings, the option to hold meetings on Defendant's premises rather off-site at a client's home or a provider's premises, the use of dictation machines for typing, to minimize her time spent in a car traveling, and to avoid situations for which self-defense may be necessary. (Pl.'s Stmt. ¶ 20.) On July 25, 2018, Plaintiff was informed that Defendant's reasonable accommodation review committee approved the use of the headset, computer software, and other office equipment which she requested. (*Id.* ¶ 23.) Defendant also worked with Plaintiff to ensure that she had a door to her office. (*Id.*)

Much of the remainder of Plaintiff's 2018 request was denied by the review committee on the premise that those accommodations interfered with essential functions of Plaintiff's job and that the accommodations would cause hardship to Defendant. (*Id.* ¶ 24.) The committee informed Plaintiff of its view that travel constitutes between sixty and sixty-five percent of the job, making it an essential function. (*Id.*) Defendant also advised that her supervisor would work with her to minimize travel as much as reasonably possible, that flexible time was available for the Plaintiff, and that time for medical appointments was already afforded to her through planned sick time under the FMLA. (*Id.*) Defendant also informed Plaintiff that her request for a change in her caseload assignments was new and that she would need to complete a new request accordingly. (*Id.* ¶ 25.) Finally, Defendant

noted that Dr. Bash, Plaintiff's treating physician, did not address Plaintiff's requested driving restriction and that Plaintiff needed to submit an additional medical report. (*Id.*) Plaintiff denies Defendant's claims that her request for a change in her caseload was new and that her physician had not addressed her driving restriction request. (*Id.*) On July 31, 2018, Plaintiff appealed this first denial of her request to modify her caseload.

On July 19, 2019 Plaintiff emailed Nancy Harnick, Defendant's Human Resources representative, asking that she have no face-to-face contact with aggressive individuals. (*Id.* ¶ 31.) Then on July 30, 2019, Plaintiff informally requested that her supervisor re-assign individuals from her caseload. (*Id.* ¶ 32.) There is a dispute over whether Plaintiff's supervisor possessed the authority to make informal accommodations as Plaintiff requested. (*Id.* at 39.) Yet the parties agree that Plaintiff's supervisor was able to transfer some cases from Plaintiff's caseload after Plaintiff identified those individuals as having behavioral issues. (*Id.* ¶ 41.)[1]

Also, on July 30, 2019, Plaintiff submitted another formal request for accommodations. (Pl.'s Mem. at 8; Request for Accommodation, Pl.'s Ex. 8 [Doc. # 54-11].) Plaintiff listed the following accommodations in her request: telework capabilities; flexible schedule for doctor's appointments, flare ups, physical therapy, surgeries/procedures; work from home; teleconference meetings; reduced travel time to less than thirty minutes/minimal time in car; ability to avoid situations where self-defense is necessary; no new assignments of individuals aggressive in nature; and no face-to-face time with aggressive individuals. (Pl.'s Mem. at 8; Pl.'s Ex. 8 [Doc. # 54-11].) Supporting this new request, Plaintiff included a report endorsing her accommodations by her pain management

---

[1] Plaintiff admits this in paragraph 41 of her 56(a) Statement, but then denies in paragraph 63 that the re-assignment "of some of Plaintiff's cases occurred resulting in an individual being removed from Plaintiff's caseload as she had requested [and] also [the] attempted assign[ment of] fewer behavioral issues to Plaintiff." (Pl.'s Stmt. ¶ 63.)

specialist. (Pl.'s Mem. at 9; Pl.'s Ex. 9 [Doc. # 54-12].) Dr. Dwight Ligham's report details that Plaintiff's "degenerative disc disease" has made "reaching [and] lifting from the floor" difficult. (Pl.'s Ex. 9 at 2.) Dr. Ligham's report also recommends that she receive various accommodations, such as limiting her driving to less than thirty minutes, "no lifting over the shoulder level," and "work[ing] from home at least 4 days per week." (*Id.* at 3.) On August 29, 2019, Defendant informed Plaintiff that she could pursue telework through an agency-wide program, take time off for appointments and procedures through other medical leave programs, and the requested thirty-minute travel limit was already approved. (Pl.'s Stmt. ¶ 60.) Defendant, however, denied Plaintiff's request to re-assign her cases and to restrict new assignments to non-assaultive clients. (*Id.* ¶¶ 60-62.) Reiterating its prior denial, Defendant explained that these requests were denied because re-assignment of cases and restrictions on the assignment of new cases would create an undue hardship on other case managers and Defendant's ability to provide its services. (*Id.* ¶ 62.) Defendant claimed further that it cannot control all situations to which an employee may be exposed in the performance of her duties; and the minimum face-to-face requirements and meeting requirements are essential functions which should not be removed. (*Id.*)

Plaintiff disputes these contentions, as well as Defendant's claim that her supervisor assigned new cases to Plaintiff within the thirty-minute driving limit that she requested. (Pl.'s Stmt. ¶ 33, 36; Frost Tr. [Doc. # 54-2] at 97: 5-21.) Defendant also engaged Plaintiff in conversations discussing alternative solutions to her request for re-assignment of cases that have potential behavior issues, such as having someone accompany Plaintiff to potentially intervene if a client became aggressive with her. (*Id.* ¶ 37; McMahon Tr. at 33:2-26.) Significantly, Defendant appears to have acknowledged that Plaintiff is disabled under the

Americans with Disabilities Act ("ADA") in its denial. (Pl.'s Ex. 25 [Doc. # 54-28] at 4.) The ADA and Rehabilitation Act share the same definition.[2]

Plaintiff filed this suit on October 7, 2019. Thereafter, on October 16, 2019, Plaintiff yet again communicated to her supervisor a request to re-assign some of her cases. (Pl.'s Stmt. ¶ 64.) On November 5, 2019, Plaintiff's supervisor informed Plaintiff that she would consider her request to re-assign individuals on her caseload if such action was a sensible business decision. (*Id.* ¶ 65.) Sometime in November 2019, Plaintiff was approved for telework and was provided a new, lighter laptop. (*Id.* ¶ 67.) Plaintiff maintains that throughout the process she submitted sufficient documentation supporting her disability and requests for accommodations, and that she felt "targeted" when Defendant refused to enter a dialogue while denying some of her accommodation requests. (Pl.'s Mem. at 9-10; Pl.'s Ex. 10 [Doc. # 54-13] at 3.)

## II.   Standard of Review

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *William v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing

---

[2] The ADA and Rehabilitation Act share the same definition for an individual with a disability. *See* Rehabilitation Act, 29 U.S.C. § 705(20)(B) (defining the term "individual with a disability" as a person who has a disability under the ADA, 42 U.S.C. § 12102(2)).

law will properly preclude the entry of summary judgment." *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

Initially, the moving party bears the burden of showing that it is entitled to summary judgment. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[T]he movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Id.* at 272-73 (citing *Celotex*, 477 U.S. at 323). If the movant makes either showing, the burden shifts to the nonmovant to demonstrate that there is a genuine issue of material fact reflected by record evidence. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Like the movant, the nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Salahuddin*, 467 F.3d at 274 (citing *Celotex*, 477 U.S. at 324; *Matsushita*, 475 U.S. at 586).

## III.   Discussion

Supporting its motion for summary judgment, Defendant advances four arguments. First, Defendant argues that Plaintiff has not established a prima facie case that she is disabled under the Rehabilitation Act. (Def.'s Mem. at 1.) Second, Defendant contends that Plaintiff failed to establish that Defendant did not engage in an interactive dialogue. (*Id.*) Third, Defendant argues that Plaintiff did not establish that it refused her a reasonable

accommodation. (*Id.*) Fourth, Defendant maintains that Plaintiff's claim for punitive damages must be dismissed because punitive damages are not permitted under the Rehabilitation Act. (*Id.*) Plaintiff disputes the first three contentions but does not advance arguments supporting punitive damages. (*See generally* Pl.'s Mem.)

Congress enacted the federal disability statutes, the ADA and Rehabilitation Act, to protect individuals with disabilities from discrimination. While each statute provides substantially similar protections,[3] Plaintiff brings her claims under the Rehabilitation Act. Section 504 of the Rehabilitation Act "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' disabled individuals." *McElwee v. City of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (citing 29 U.S.C. § 794(a)). A "qualified" person is one with a disability "who, with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(l)(1); *see also Wernick v. Fed. Rsrv. Bank of N.Y.*, 91 F.3d 379, 385 (2d Cir. 1996) ("[F]ailure to make reasonable accommodations for one who is disabled can constitute discrimination.").

To bring a failure-to-accommodate claim of discrimination, a plaintiff must first establish a prima facie case that: (1) the plaintiff is a person with a disability under the meaning of the Rehabilitation Act; (2) her employer is covered by the statute and has notice of her disability; (3) with reasonable accommodations, the plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such

---

[3] "Apart from the Rehabilitation Act's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities," the requirements of both the Rehabilitation Act and ADA are "precisely the same." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 n.6 (2d Cir. 2002); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (noting that, absent the presence of those distinctions, claims under each statute are treated the same); 29 U.S.C. § 794(d) (requiring that the Rehabilitation Act be interpreted in accordance with the standards applied under the ADA).

accommodations. *Natofsky v. City of N.Y.*, 921 F.3d 337, 352 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2668 (2020) (citing *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). "The employer can defeat the claim if it shows (a) that making a reasonable accommodation would cause it hardship, and (b) that the hardship would be undue." *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997).

Defendant acknowledges that it is covered by the Rehabilitation Act but disputes that Plaintiff has established a disability and it argues that it made reasonable accommodations except where Plaintiff's requests proved an undue hardship to Defendant. A review of the record evidence reveals that there is a genuine dispute about whether Plaintiff is a person with a disability. However, there is no triable dispute that Defendant provided Plaintiff reasonable accommodations for her disability.

### A.  Whether Plaintiff is Disabled

Defendant contends that Plaintiff is not disabled. "While Plaintiff relies on her workers' compensation partial disability ratings, states' workers' compensation systems rely on different standards than those applicable to the ADA and each serves different ends." (Def.'s Reply at 3.) Although Defendant admits that Plaintiff did suffer back and neck conditions that caused her pain, Defendant maintains that she has not provided evidence that these health problems substantially limit a major life activity as required by the law. (*Id.* at 2.)

Plaintiff argues that not only has she established that she has a disability within the meaning of the disability statutes, but also that Defendant conceded that she has a disability. (Pl.'s Mem. at 18-19.) Plaintiff further contends that Defendant "misleadingly raises the plaintiff's other gainful activities, inferring that because the plaintiff is able to perform the tasks associated with, for instance, 'crafting,' she cannot be considered disabled" and that Defendant's "view that an employee must not be able to work at any occupation to qualify

for protection under the Rehabilitation Act is simply without legal foundation." (Pl.'s Mem. at 35-36.) Finally, Plaintiff argues that Defendant's reliance on caselaw decided before Congress amended the ADA is misplaced because the amendments were specifically enacted to reverse the Supreme Court's improper narrowing of the ADA's scope. (Pl.'s Mem. at 15-16.)

The Rehabilitation Act draws its definition of "disabled" from the ADA, 42 U.S.C. § 12102. *See* 29 U.S.C. § 705(20)(B). "In order to qualify as an individual with a disability under the ADA plaintiff must establish: (1) the presence of a mental or physical impairment, (2) that the impairment affects a 'major life activity,' and (3) that the impairment 'substantially limits' this major life activity." *Garvin v. Potter*, 367 F. Supp. 2d 548, 561 (S.D.N.Y. 2005) (citing *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 194-95 (2002)). Major life activities refer to basic functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Mitchell v. Girl Scouts of the USA*, No. 98 CV 3730, 2003 WL 22705121, at *5, (S.D.N.Y. Nov. 17, 2003) (quoting 29 C.F.R. § 1630.2(i)). This is a non-exclusive list, and the Second Circuit has identified other major life activities "including sitting, standing, lifting, reaching, and sleeping." *Id.* at *5 (citations omitted). Importantly, "an impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994). Rather, the impairment must "substantially limit employment generally." *Joyce v. Suffolk Cnty.*, 911 F. Supp. 92, 95 (E.D.N.Y. 1996) (quotation and citations omitted).

The record indicates that there is a genuine dispute of material fact regarding Plaintiff's disabled status. Plaintiff's physician describes permanent impairments to her neck, back, and shoulders. (*See* 8/14 Dr. Bash Letter, Pl.'s Ex. 17 [Doc. #54-20] at 2 (noting that Plaintiff "has a permanent partial impairment to her lumbar spine" and that "she will

continue to require pain management treatment" and "physical therapy").) In addition, Plaintiff offers a report by her pain management specialist describing her impairments as interfering with life activities such as working, sitting, driving, walking, bending, lifting, pulling, pushing, typing, and sleeping. (Pl.'s Mem. at 19; Pl.'s Ex. 9 [Doc. # 54-12].) Finally, in approving some of Plaintiff's requests for accommodation, Defendant indicated that it agreed that Plaintiff is disabled. (*See* Pl.'s Ex. 25 [Doc. # 54-28] (checking the box indicating that Plaintiff has met the ADA definition of disabled).) Defendant counters that Plaintiff cannot claim that her disability substantially limits her under the meaning of the Rehabilitation Act because she has been able to continue working even with her claimed disability. (Def.'s Reply at 3.)

Defendant cites to *Daly v. Westchester County Board of Legislators* to suggest that Plaintiff's ability to continue to work is evidence that she somehow has overcome her impairments. 19-CV-04642 (PMH), 2021 WL 229672, *10 (S.D.N.Y. Jan. 22, 2021). But the court in *Daly* dismissed the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because the plaintiff did not "identify how, if at all, [his claimed disability] substantially limited a major life activity." *Id.* Unlike here, where Plaintiff actually received some of the accommodations she requested in order to continue her work, the plaintiff in *Daly* continued to work at a high level despite never receiving formal accommodations. *Id.* at *2-3. Moreover, at the summary judgment stage, Plaintiff has done more than merely allege that she is disabled; she has provided record evidence from physicians to support her claim. Thus, *Daly* is factually distinct and does not support Defendant's argument that Plaintiff did

not require accommodations because she was not disabled within the meaning of the Rehabilitation Act.[4]

Viewing the evidence in the record in a light most favorable to Plaintiff, there is a genuine dispute of material fact as to whether Plaintiff is disabled, and a reasonable factfinder could conclude either way. Defendant's motion for summary judgment will not be granted for lack of evidence of a disability.

### B.  Whether Defendant Reasonably Accommodated Plaintiff

The Rehabilitation Act requires an employer to afford reasonable accommodation for an employee's known disability unless the accommodation would impose an undue hardship on the employer. *See* 42 U.S.C. § 12112(b)(5)(A). The determination of what is a reasonable accommodation requires an inquiry into both the benefits and costs of the accommodation. *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995) ("In short, an accommodation is reasonable only if its costs are not clearly disproportionate to the benefits that it will produce."). An accommodation is reasonable if it enables an individual with a disability who is qualified to perform the essential functions of her employment. *Noll v. Int'l Bus. Mach. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015). But a reasonable accommodation cannot abrogate the employee's responsibility for performing an essential function of the job. *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003). An essential function is a fundamental duty to be performed in the position rather than a marginal function. *Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 202 (D. Conn. 2013).

---

[4] Defendant also references Plaintiff's Complaint to parry what it perceives as an argument that Defendant regarded her as disabled. (*See* Def.'s Reply at 3-4.) But Plaintiff's summary judgment opposition arguments do not rely on the premise that Defendant "regarded" her as disabled, and this argument simply is misplaced.

Integral to the provision of a reasonable accommodation, as well, is the engagement of an interactive process by an employer with the disabled individual. *McBride*, 583 F.3d at 100. Courts have considered "steps toward engaging in an interactive process" to include meeting with the employee requesting an accommodation, "request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having considered the employee's request, and offer[ing] and discuss[ing] available alternatives if the request is too burdensome." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 218-19 (2d Cir. 2001) (alterations in original). Although the Second Circuit does not recognize an independent claim for failure to engage in an interactive process, it can be introduced as evidence that an employer has not discharged its duty to provide reasonable accommodation. *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017).

Ultimately, the reasonableness of an employer's accommodation is a "fact-specific" question that often must be resolved by a factfinder. *See Wernick*, 91 F.3d at 385. But where the employer has already taken or offered measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, that accommodation is "plainly reasonable." *Id.* In other words, the reasonableness of the existing accommodation obviates the need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable. *See U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400-02 (2002); *Borkowski*, 63 F.3d at 137-38.

In *Wernick*, for example, the Second Circuit affirmed summary judgment against a Federal Reserve Bank of New York employee who claimed a back injury similar to Plaintiff's condition. 91 F.3d at 381. Also, like Plaintiff, the employee did not contest that her employer "provid[ed] ergonomic furniture and the opportunity to move around and stretch periodically." *Id.* at 384. But the employee claimed that "by failing to assign her to work under

a different supervisor, [her employer] did not satisfy the reasonable accommodation requirements of the disability acts." *Id.* The Second Circuit rejected that argument, finding that "nothing in the law leads us to conclude that in enacting the disability acts, Congress intended to interfere with personnel decisions within an organizational hierarchy." It concluded that "the accommodations offered by [the employer] were plainly reasonable." *Id.* at 385.

Plaintiff argues that Defendant refused her accommodations without an interactive dialogue. However, the record presents undisputed occasions on which Defendant, through Plaintiff's supervisors, Human Resources staff, and the accommodations review committee, communicated with Plaintiff about her accommodations. In fact, Defendant approved some of her requests for accommodations. (Pl.'s Stmt. ¶¶ 23, 60, 67.) Defendant also explained to Plaintiff how some of her other accommodation requests, such as handicap parking and permission to telework, may be attained through existing programs. (*Id.* ¶¶ 24, 60.) Moreover, where Defendant did not approve Plaintiff's request to re-assign her cases, it provided an explanation to her. Plaintiff concedes that her supervisor contacted her requesting a "proposal of how [Plaintiff] will perform essential functions" of her job given the re-assignment request, (*id.* ¶ 47), and that Defendant requested more documentation to more thoroughly review her requests, (*id.* ¶ 25). Finally, Defendant provided Plaintiff with alternatives, such as taking breaks while driving to see clients, (*id.* ¶ 45), and having someone accompany Plaintiff to potentially intervene if a client became aggressive with her, (*id.* ¶ 37). Thus, the record sets forth without genuine dispute that the Defendant engaged in a recognizable interactive process, communicating what accommodations it was willing to approve, which accommodations it could not approve and why. *See Lovejoy-Wilson*, 263 F.3d at 218-19.

The record also supports Defendant's position that it provided Plaintiff several accommodations. There is no dispute that, in response to her first formal request for accommodations, Defendant instructed Plaintiff on the proper procedures to acquire a handicap parking space and provided her with the office equipment, such as a headset, Ergotron workstation, and computer software that she requested. (Pl.'s Stmt. ¶¶ 23, 25.) In addition, after Plaintiff's second request for accommodations, Defendant also approved her request for telework capabilities and directed her to pre-existing procedures regarding taking time off for appointments. (*Id.* ¶¶ 60, 67.) It is likewise undisputed that Plaintiff's supervisor was able to transfer some cases from Plaintiff's assignment after Plaintiff identified some individuals as having behavioral issues. (*Id.* ¶ 41.) While Plaintiff argues that this accommodation did not go far enough because she still had individuals whom she perceived to be aggressive assigned to her, Defendant's accommodations need not be perfect, just effective. *See Noll*, 787 F.3d at 95 (observing that a "[r]easonable accommodation may take many forms, but it must be effective" and "employers are not required to provide a perfect accommodation, or the very accommodation most strongly preferred by the employee"); *see also* 29 C.F.R. § 1630 appendix ("[Although] the preference of the individual with a disability should be given primary consideration[,] . . . the employer providing the accommodation has the ultimate discretion to choose between effective accommodations, and may choose the less expensive accommodation or the accommodation that is easier for it to provide.").

The thrust of the parties' disagreement centers around Defendant's refusal to fully adopt her request to limit her travel[5] and exposure to clients with behavioral problems

---

[5] Plaintiff challenges the effectiveness of Defendant's accommodation limiting her travel to thirty minutes because there were subsequent occasions where she had to travel for longer. (Pl.'s Mem. at 35.) However, occasional travel time variance where Defendant otherwise provided for that accommodation does not show a violation of the Rehabilitation Act. *See,*

through the re-assignment of her cases. (Pl.'s Mem. at 21.) Plaintiff maintains that re-assignment of cases would not pose an undue hardship on Defendant. (*Id.*) Plaintiff supports her position by arguing that "defendant not only refused the accommodations which the plaintiff requested . . . the defendant unilaterally . . . refused the plaintiff's requests under the guise of undue hardship." (*Id.*)

The record supports the Court's conclusion that Defendant acted reasonably granting some accommodations while refusing Plaintiff's requested accommodation, that clients she believed put her at an elevated risk of assault be re-assigned. *See Wernick*, 91 F.3d at 384-85 (observing that an employer's duty is only to treat a disabled employee as they would treat similarly situated employees). Plaintiff, even as a disabled individual, is not legally entitled to re-assignment, shifting the burden to her co-workers. *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995); *see also Wernick*, 91 F.3d at 385. In any event, that accommodation could reduce the risk that Plaintiff will be injured during a client visit, but it would not eliminate it. Although the risk of serious injury stemming from a physical altercation may be higher due to her compromised back and neck, the risk of experiencing an assault itself is a risk confronted by every case manager and is not a disadvantage which flows from Plaintiff's claimed disability. Plaintiff describes her condition as interfering with her ability to perform physical tasks such as sitting, driving, bending, and lifting. (Pl.'s Mem. at 19.) Thus, an accommodation seeking to limit exposure to the risk of assault would not be as effective in alleviating Plaintiff's physical limitations as would providing accommodations that allow her to take breaks, work from the comfort of her home, and rely on handicap accessibility tools in the office—accommodations Defendant did supply.

---

*e.g.*, *Fink v. N.Y. City Dep't of Pers.*, 53 F.3d 565, 568 (2d Cir. 1995) ("Where an institution has made reasonable accommodation . . . it will not be found to have discriminated . . . merely because personnel employed by the institution as part of that accommodation fail to perform their assigned role to perfection in accordance with their instructions.").

The Court does not discount the risk of serious injury to Plaintiff if another event unfolds like the incident which caused her present disability. It is notable, however, that Plaintiff's disability was not caused by a behaviorally aggressive client, but instead by unfortunate and unforeseen injuries she sustained as she rendered aid to a client in distress. This fact underscores the Court's conclusion: the accommodations supplied were effective in eliminating the disadvantages flowing from her disability and the accommodation denied would not have been a more effective accommodation. By insisting that Defendant's failure to deliver this accommodation violated the Rehabilitation Act, Plaintiff seeks the perfect accommodation, but the law entitles her only to what is reasonable.

Given the evidence of accommodations that Defendant provided Plaintiff, the Court need not examine whether the accommodation that Defendant rejected would have created undue hardship to it. *See Noll*, 787 F.3d at 97 (affirming summary judgment for defendant without examining the refused accommodation where the defendant provided a reasonable accommodation). The Court grants summary judgment to Defendant because Defendant's accommodations were reasonable, even if they were not perfect.

### C.  Whether Punitive Damages are Permitted under the Act

Defendant argues that it is well established that punitive damages are not permitted under § 504 of the Rehabilitation Act.  Plaintiff does not respond to this argument.  In *Barnes v. Gorman*, the Supreme Court squarely held that punitive damages may not be awarded to a plaintiff under the Rehabilitation Act. 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."). Therefore, the Court will grant Defendant's motion for summary judgment with respect to Plaintiff's claim for punitive damages.

**IV.**    **Conclusion**

For the forgoing reasons, Defendant's Motion for Summary Judgment [Doc. # 46] is GRANTED.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of February 2022